## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**TYRIE L. NELMS,**
     **Plaintiff,**

**vs.**                         **Case No.: 5:07cv62/RS/MD**

**SERGEANT BERT HATCHER, et al.,**
     **Defendants.**

---

## REPORT AND RECOMMENDATION

     This case filed pursuant to 42 U.S.C. § 1983 arises out of an incident occurring at Jackson Correctional Institution ("Jackson CI") on July 30, 2006. Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*,[1] claims that Sergeant Bert Hatcher and Sergeant Timothy Tidwell violated his Eighth Amendment rights when they used excessive force on him. Plaintiff claims Nurse Paula Bryson violated his Eighth and Fourteenth Amendment rights when she failed to provide medical care for his pain and injuries, and falsified medical forms to cover up Hatcher's and Tidwell's misconduct. As relief, plaintiff seeks monetary damages and injunctive relief. Pending before the court is defendants' motion for summary judgment. (Doc. 106;[2] *see also* Docs. 63, 64). Plaintiff has responded in opposition to the motion. (Docs. 107, 109, 110).[3] Upon review of the summary judgment record, it is the

---

[1] Court records reflect as of December 16, 2008 the plaintiff has paid $321.92 toward the $350.00 filing fee; therefore, as of that date he still owed $28.08 to the court.

[2] Defendants' motion for summary judgment appears on the docket as doc.106. However, the actual document image appears at doc. 63. Hereafter all citations to the motion will be to its document image.

[3] Plaintiff's initial response to the motion for summary judgment appears on the docket as doc. 107. However, the actual document image appears at doc. 83. Hereafter, all citations to plaintiff's initial response will be to its document image.

opinion of the undersigned that defendants' motion should be denied in part and granted in part.

## FACTUAL BACKGROUND

### July 30, 2006 Incident

In his verified second amended complaint (doc. 27), plaintiff alleges that on July 30, 2006 he and his cellmate Dwayne Brookes approached defendant Sgt. Hatcher to discuss why plaintiff and Brookes had been "locked-down" in their cell the night before. (Doc. 27, p. 6). During the discussion, Sgt. Hatcher repeatedly attempted to provoke an angry response from plaintiff by calling him profane names. He then ordered Brookes inside the dormitory, and became belligerent with plaintiff. Hatcher "g[ot] in plaintiff's face" and, when plaintiff asked why he was treating him that way, Hatcher responded "I'll do more than that," and knocked plaintiff to the ground with a punch to the mouth. (*Id.*). Scared, plaintiff tried to get up and run, but Sgt. Tidwell knocked him back down. Tidwell and Hatcher then repeatedly kicked and punched plaintiff while he was lying on the ground.

Plaintiff was taken to the medical department where he complained to defendant Nurse Bryson of pain in his ribs, back, legs and head. Plaintiff states that despite his complaints and the fact that "it was obvious from just looking at Plaintiff that he was in severe pain," Bryson provided no medical treatment or pain medication, falsified medical forms to make it appear as though plaintiff had not been injured, and refused to refer plaintiff to a physician. (*Id.*, p. 7).[4] Plaintiff asserts that after the examination while he was waiting in the medical department, he "suffered a pulled muscle in his shoulder and back. This cause[d] Plaintiff['s] muscle in his shoulder to heal improperly." (*Id.*).

Following the incident, Sgt. Hatcher charged plaintiff with unarmed assault, alleging that plaintiff had attempted to strike him in the face. Plaintiff states he never

---

[4]**Specifically, plaintiff asserts: "Defendant [Bryson] filled out a DC4-769 form intentionally incorrect. She stated that there were no injuries complained of. She did not fill out a DC4-701C form as required so Plaintiff can be seen by a doctor. Nor did the Defendant fill out a DC4-708 form d[e]scribing the injuries with a diagram form." (Doc. 24, p. 7).**

attempted to strike Hatcher, and that Hatcher fabricated the disciplinary report "to explain away the beating." (*Id.*, p. 6).  Plaintiff was convicted of the DR.  According to plaintiff, this DR has caused him to serve time in close management.

Two Disciplinary Reports

On August 2, 2006, plaintiff was served with two separate disciplinary reports ("DR").  One DR was for unarmed assault written by defendant Hatcher, who stated as follows:

> At approximately 6:30 a.m., on July 30, 2006, while standing outside "H" housing counting my inmates, who were returning from chow, Inmate Nelms, Tyrie L., DC#072494, walked past me into the dorm and suddenly came back out of the dorm just as the last of my inmates entered.  Inmate Nelms approached me and began slinging his arms in the air with his fists clinched, while stating, "Sergeant Hatcher why did you lock my fucking door last night?  I been down twenty something years and you ain't gonna treat me like that fuck boy!"  Inmate Nelms suddenly attempted to strike me in the face with his right fist.  At that time, it became necessary to use force to protect myself from injury.  Shift OIC, Captain T. Matautia was notified of this incident.  Inmate Nelms was checked by medical and placed in administrative confinement pending resolution of this report.

(Doc. 63, Ex. J, p. 2).  As mentioned earlier, plaintiff denied attempting to strike Hatcher in his amended complaint, asserting that Hatcher fabricated the DR to protect himself and make it appear that it was necessary to use force.  (Doc. 27, p. 7).

The other DR was for inciting riots written by defendant Tidwell, who described the incident as follows:

> On Sunday, July 30, 2006, at approximately 6:30 a.m., while attempting to restrain Inmate Nelms, Tyrie L, DC#072494, outside of Wing 3 of "H" housing unit, Inmate Nelms began screaming into the window of the dorm stating, "They are killing me boys.  They are fucking killing me!"  I gave Inmate Nelms a direct order to stop resisting and to be quiet, to which he did not comply.  When the inmates started to yell out the windows, I again gave Inmate Nelms another direct order to stop resisting and to be quiet.  At which time, Inmate Nelms stated, "Fuck that, I want them to see this shit!"  I then gave Inmate Nelms another direct order to stop resisting and to be quiet, to which he complied.  Inmate Nelms was placed in administrative confinement

pending resolution of this report.  Shift OIC, Captain T. Matautia was notified and advised me to submit this report.

(*Id.*, **Ex. I, p. 31**).

After a disciplinary hearing, plaintiff was found guilty on both DRs.  (*Id.*, **Ex. J, p. 8; Ex. I, p. 35**).  **Plaintiff received sixty days of disciplinary confinement for the unarmed assault DR and sixty days of disciplinary confinement for the inciting riots DR.  Plaintiff's appeals to the warden were denied.  (***Id.***, Ex. J, pp. 9-11; Ex. I, pp. 36-37).  Plaintiff's appeals to the Secretary of the DOC were also denied.  (***Id.***, Ex. J, pp. 12-14; Ex. I, pp. 38-39).  Plaintiff filed a mandamus petition in state court challenging the two DRs.  (***Id.***, Ex. K).  The petition was dismissed as untimely.  (***Id.***).  Plaintiff then sought certiorari review in the Florida First District Court of Appeal.  (***Id.***).**

**Plaintiff grieved the alleged use of excessive force and lack of medical care through the inmate grievance procedure.  Plaintiff's complaint was referred to the investigative section of the Office of the Inspector General ("OIG").  (***Id.***, Ex. J, pp. 15-19).  The OIG found insufficient evidence to support plaintiff's allegations.  (***Id.***, Ex. L).**

## PROCEDURAL HISTORY

**Plaintiff initiated this action on March 19, 2007.  (Doc. 1).  On September 7, 2007, he filed a second amended complaint raising Eighth Amendment claims against defendants Hatcher and Tidwell, and Eighth and Fourteenth Amendment claims against defendant Bryson.  (Doc. 27, pp. 7-8).  On April 24, 2008, defendants filed a special report and supporting documents, (docs. 63, 64), to which plaintiff responded (doc. 83).  After a period of discovery, the court issued an order on October 2, 2008 advising the parties that as of that date the special report would be construed as a motion for summary judgment. (Doc. 105).  The parties were advised of the importance and ramifications of Rule 56 summary judgment consideration, were notified that the summary judgment motion would be taken under advisement on October 31, 2008, and were provided until that date to submit additional Rule 56**

materials. (Doc. 105). In response, plaintiff filed additional argument and affidavits. (Docs. 109, 110).[5]

Defendants, in their motion for summary judgment, assert the following defenses: (1) that plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) because a finding in plaintiff's favor would necessarily imply the invalidity of his two disciplinary convictions; (2) that this action is barred by the *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) because plaintiff is currently challenging his disciplinary proceedings in the state courts; (3) that plaintiff has failed to establish a violation of his Eighth Amendment rights; and (4) that defendants are entitled to Eleventh Amendment immunity from plaintiff's official capacity claims for damages. (Doc. 63).

## LEGAL STANDARDS

### Summary Judgment Standard

In order to prevail on their motion for summary judgment, defendants must show that plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If defendants successfully negate an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit

---

[5]The argument and OIG witness statements submitted in Doc. 109 have not been considered because they do not meet the requirements for affidavits. Only the August 28, 2006 affidavit of Dwayne Brookes, (doc. 109, Brookes Aff.), the October 16, 2008 affidavit of Michael Rease, (doc. 110, Rease Aff.), and the October 17, 2008 affidavit of Anthony Bass, (doc. 110, Bass Aff.), have been considered.

under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510.  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"), *cert. denied*, 522 U.S. 1126 (1998) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to the plaintiff.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove.  *Celotex Corp.*, 477 U.S. 317 (1986).  A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

**Whether Plaintiff's Claims are Barred by *Heck***

In *Heck v. Humphrey, supra*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983

> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus. . . .
> A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under §
> 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the
> district court must consider whether a judgment in favor of the plaintiff
> would necessarily imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed. . . .

*Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372 (internal citation and footnote omitted).

The *Heck* rule has its origins in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36

L.Ed.2d 439 (1973).  In *Preiser*, an inmate brought a § 1983 suit seeking injunctive

relief to compel restoration of good-time credits.  The Court concluded that "when

a state prisoner is challenging the very fact or duration of his physical

imprisonment, and the relief he seeks is a determination that he is entitled to

immediate release or a speedier release from that imprisonment, his sole federal

remedy is a writ of habeas corpus."  411 U.S. at 500, 93 S.Ct. at 1841.

The principles established in *Heck* and *Preiser*, also known as the "implicit

habeas exception" to § 1983's coverage, has been extended to prison disciplinary

proceedings.  In *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906

(1997), the Court applied the exception to a prisoner's § 1983 suit challenging the

procedures used to obtain a disciplinary conviction which resulted in the loss of

good-time credits.  The *Balisok* Court concluded that the prisoner's claim for

declaratory relief and money damages necessarily implied the invalidity of the

deprivation of his good-time credits.  Therefore, because a judgment in the

prisoner's favor would necessarily be at odds with the State's calculation of time to

be served in accordance with the prisoner's underlying sentence, the Court held that

the § 1983 suit could not be pursued unless the prisoner had successfully

invalidated the revocation penalty.  *Id.*, at 646-48, 117 S.Ct. at 1588-89.

The Court has rejected, however, "the mistaken view . . . that *Heck* applies

categorically to all suits challenging prison disciplinary proceedings."  *Muhammad

v. Close*, 540 U.S. 749, 754, 124 S.Ct. 1303, 1306, 158 L.Ed.2d 32 (2004).   In

*Muhammad*, the Court declined to apply *Heck* to a prisoner's § 1983 suit claiming that a prison official charged and subjected him to pre-hearing lockup in retaliation for his having earlier filed lawsuits and grievances.  The Court concluded that the claim did not necessarily affect the computation of good-time credits.  *Id.*, at 753, 124 S.Ct. at 1305.  Therefore, because the prisoner's suit "could not . . . be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence," *id.*, at 754-55, 124 S.Ct. at 1306, *Heck* was inapplicable.  *Id.* at 755, 124 S.Ct. at 1306; *accord Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 1248, 161 L.Ed.2d 253 (2005) (holding that § 1983 claims for declaratory and injunctive relief by state prisoners challenging the validity of the procedures for determining parole eligibility that had been used to deny them parole were cognizable in a § 1983 proceeding).[6]

In the instant case, the parties do not dispute that the penalty imposed in plaintiff's disciplinary proceedings involved only disciplinary confinement.  No gain time was revoked or eliminated.  (Doc. 63, pp. 6, 9).  This suit cannot therefore be construed as seeking a judgment at odds with plaintiff's conviction or with the State's calculation of time to be served in accordance with plaintiff's underlying sentence.  Thus, plaintiff's claims are not barred by *Heck*.  *See Muhammad, supra*; *see also e.g., Smith v. Villapando*, 286 Fed. Apx. 682 (11th Cir. 2008) (holding that prisoner's due process challenge to disorderly conduct disciplinary report for which he received 30 days in disciplinary confinement as punishment, did not seek restoration of gain time; therefore, his § 1983 claim was not barred on the ground that it would necessarily imply the invalidity or the duration of his confinement); *Pittman v. Tucker*, 213 Fed. Appx. 867, 869 (11th Cir. 2007) (holding that prisoner's § 1983 claims were not *Heck*-barred because there was no indication that a judgment in his favor would necessarily imply the invalidity of his conviction or sentence; although prisoner claimed that officers retaliated against him by filing a false disciplinary report and placing him in confined management, there was no indication

---

[6]The *Wilkinson* Court reasoned that a judgment in the prisoners' favor would not necessarily imply the invalidity of their confinement or its duration.  *Id*., at 82, 125 S.Ct. at 1248.  Thus, the prisoners' § 1983 suit did not fall within the "implicit habeas exception.  *Id*.

that these disciplinary actions affected his sentence; moreover, defendants did not assert that the disciplinary actions affected the length of plaintiff's sentence); *Nelson v. Jimenez*, 178 Fed. Appx. 983, 985 (11th Cir. 2006) (holding that prisoner's § 1983 action against disciplinary hearing officer, alleging that officer violated due process rights during disciplinary proceeding that upheld charge for possession of marijuana and abuse of mail system, was not barred by *Heck* because plaintiff's complaint "did not seek to challenge the validity of his underlying conviction, and did not seek to affect the time he would serve related to that conviction").[7]

**Whether *Younger* Abstention is Appropriate**

It is well settled that "[f]ederal courts should abstain from exercising their jurisdiction if doing so would 'disregard the comity between the States and the National Government.'" *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987)). While abstention "remains 'the exception, not the rule' to the federal courts' 'virtually unflagging' duty 'to adjudicate claims within their jurisdiction,'" *Wexler* at 1339 (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989)), it "espouses a strong federal policy," *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) ("While non-abstention remains the rule, the *Younger* exception is an important one."). In determining whether abstention under *Younger* is warranted, a court must consider three factors:  (1) whether there is an ongoing state judicial proceeding, (2) whether the proceeding implicates important state interests, and (3) whether there is an adequate opportunity to raise constitutional challenges in the state proceeding. *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521; *see also Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

The defendants assert this court should abstain from proceeding with this case because plaintiff is currently challenging his two disciplinary proceedings in

---

[7] The undersigned cites *Smith, Pittman and Nelson* only as persuasive authority and recognizes that these opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

the state courts and litigating the same claim he raises here, "that both of the disciplinary reports were falsified. . . ." (Doc. 63, p. 15). Defendants' statement of plaintiff's claims is only partially correct. It is true that plaintiff claimed in the state mandamus proceeding that the DRs violated due process because they were false. (Ex. K, p. 26 in ECF). However, the claim plaintiff raises in this § 1983 suit, at least with regard to defendants Hatcher and Tidwell, is that they violated the Eighth Amendment's proscription against cruel and unusual punishment when they used excessive force on him. He is not claiming that they deprived him of due process by fabricating the DRs.[8]

Furthermore, as the state mandamus court emphasized, the state mandamus proceeding "was . . . as an appellate remedy to review quasi-judicial action of the administrative agency," in other words, to review the prison disciplinary proceeding. *See Woullard v. Bishop*, 734 So.2d 1151 (Fla. 1st DCA 1999) (holding that mandamus "is the appropriate remedy for seeking review of a prison disciplinary proceeding allegedly conducted in violation of constitutional requirements or the rules of the Department of Corrections."). The mandamus court's review of the DOC's disciplinary decision was limited to determining the following: "(1) whether procedural due process was accorded; (2) whether the essential requirements of law were observed; and (3) whether the administrative findings and judgment [were] supported by competent substantial evidence." *Plymel v. Moore*, 770 So.2d 242, 246 (Fla. 1st DCA 2000) (citing *Haines City Community Dev. v. Heggs*, 658 So.2d 523, 530 (Fla. 1995)). Thus, even if plaintiff attempted to raise his Eighth Amendment claim in the mandamus proceeding, the court did not, and could not, address it given the court's limited jurisdiction.

---

[8]This distinction is observed in plaintiff's exhaustion of the administrative grievance procedure. Plaintiff utilized the grievance process in appealing the disciplinary hearing teams' decisions. (Ex. I, pp. 36-43 ; Ex. J, pp. 9-14). He then utilized a separate grievance proceeding to raise his excessive force/assault claim. (Ex. J, pp. 15-19). The prison treated the two issues separately. In the DR appeals, the institution and Central Office addressed plaintiff's due process concerns. (Exs. I, pp. 36-43; Ex. J, pp. 9-14). They handled plaintiff's grievances alleging excessive force by referring them to the OIG. (Ex. J, pp. 15-19; Ex. L).

Furthermore the mandamus court, acting in its appellate capacity, was "'not empowered to make findings of fact.'"  (Ex. K, p. 26 in ECF (citing *Farneth v. State*, 945 So.2d 614, 617 (Fla. 2d DCA 2006).  Thus, the court could not make findings of fact concerning the underlying incident, including the amount of force used, the extent of plaintiff's injuries, the need for the application of force, the relationship between that need and the amount of force used; any efforts made to temper the severity of a forceful response; or the extent of the threat to the safety of staff and inmates.  Nor could the state court make conclusions of law concerning whether the force Hatcher and Tidwell used was excessive and violative of the Eighth Amendment.

Based on the foregoing, abstention under *Younger v. Harris* is not warranted in this case.  Permitting plaintiff to raise his Eighth Amendment claims against Hatcher and Tidwell in this court would not result in this court interfering in a pending state judicial proceeding, because the pending state proceeding does not provide an adequate opportunity for plaintiff to raise his Eighth Amendment claims. The same is true of plaintiff's Eighth and Fourteenth Amendment claims against Nurse Bryson.[9]

### Eleventh Amendment Immunity

It is well settled that a plaintiff may not bring a § 1983 action for monetary damages against a state, state agency, or state officials in their official capacities, because neither a state nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 LED.2d 45 (1989).  Furthermore, absent waiver or

---

[9]Defendants rely, in part, on a Report and Recommendation issued by Magistrate Judge Sherrill in *Muhammad v. Crosby*, Case Number 4:05cv193/WS/WCS, Doc. 117. There, plaintiff sought to amend his complaint to add a civil rights claim concerning being subjected to a "forced shave." The defendants objected to amendment, arguing that that claim was currently pending in the state court (the Circuit Court of Leon County, Florida).  Judge Sherrill found that the plaintiff's pending state court case challenged the DOC's forced shave policies. However, that case is distinguishable from the instant case, because the claims plaintiff is raising here are not pending in the state court. A due process challenge to the disciplinary convictions, not Eighth Amendment claims against the officers involved, is pending in the state courts. Even if plaintiff had raised (or attempted to raise) his Eighth Amendment claims in the state mandamus and certiorari proceedings, the state court would not have had jurisdiction to decide them.

express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a damages suit brought by a private individual against a state in federal court. *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Gamble v. Florida Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). In light of the foregoing, plaintiff's § 1983 claim for damages against defendants in their official capacities must be dismissed.

## Eighth Amendment Standard with Regard to Use of Force

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).  To determine whether force was applied maliciously and sadistically to cause harm, a court considers a number of factors: "(1) the extent of the injury; (2) the need for the application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing *Whitley*, 475 U.S. at 321; *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).  From consideration of these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  The Court in *Whitley* narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the

evidence, viewed in the light most favorable to the plaintiff, will support <u>a reliable inference of wantonness in the infliction of pain</u> under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322, 106 S.Ct. 1078 (emphasis added).

<u>Eighth Amendment Standard with Regard to Inadequate Medical Care Claims</u>

To prevail on an Eighth Amendment claim challenging the conditions of his confinement, plaintiff must satisfy both an objective and a subjective inquiry. The first requirement, the objective component, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981))), *cert. denied*, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001). In the context of denial of medical care, this first requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need. *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)).

A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 56 (1994), "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted). The seriousness of the deprivation of that need is measured by the detrimental effect that the deprivation brought upon the person. *Id.* at 1188-89. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188.

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the

sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291).

Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. To sustain a claim, plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995) (citing *Farmer*, 114 S.Ct. at 1978-79). Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Murrell v. Bennett*, 615 F.2d 306, 310, n. 4 (5th Cir. 1980). An inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id*. at 105-06, 97 S.Ct. at 292; *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L. Ed.2d 662 (1986). Negligence alone is not enough to violate the constitution. *Id.*

## Equal Protection Standard

The Equal Protection Clause requires that the government treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In order to establish an equal protection claim, "a plaintiff must demonstrate that (1) 'he is similarly situated with other p[ersons] who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest,

such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Parole & Probation Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).

<u>Conclusions of Law Regarding Material Facts of Plaintiff's Claims</u>

The parties sharply dispute almost every fact of the July 30, 2006 incident between plaintiff, defendant Hatcher and defendant Tidwell.  The facts, construed in the light most favorable to plaintiff, the non-moving party, are that he approached defendant Hatcher in a non-confrontational manner to discuss the previous night's lock-down; that in response to plaintiff's questions Hatcher became angry and combative; and that Hatcher punched plaintiff in the mouth for no reason.  The punch knocked plaintiff to the ground.  Plaintiff became afraid and attempted to get up to run away, but defendant Tidwell knocked him back down with a punch to the head.  (Doc. 27, *see also* Doc. 110, Rease Aff.).  Hatcher and Tidwell then punched and kicked plaintiff several more times while plaintiff was lying on the ground restrained by at least two officers.  (Doc. 27; Doc. 110, Rease and Bass Affs.).  According to one inmate witness, three to four officers were on top of plaintiff.  (Doc. 110, Bass Aff.).  As a result of the beating, plaintiff suffered severe pain in his ribs, back, legs and head.  (Doc. 27, p. 6).  Defendants, on the other hand, assert that plaintiff was physically aggressive from the beginning; that he attempted to strike Hatcher in the face; that Hatcher placed his right hand on plaintiff's right wrist and his left hand on plaintiff's right elbow and, with Tidwell's assistance, "placed inmate Nelms face down on the ground."  (Doc. 64, Hatcher Aff.).  Hatcher and Tidwell deny that Nelms was ever punched or kicked by themselves or any other officer.  (*Id.*, *see also* Tidwell Aff.).  These disputed facts are critical to plaintiff's excessive force claim.  Therefore, summary judgment is inappropriate.

There are, however, no genuine disputes of material fact concerning plaintiff's Eighth Amendment claims against defendant Nurse Bryson.  Plaintiff claims Bryson was deliberately indifferent to his serious medical needs when she failed to provide medical treatment after plaintiff informed her of his "injuries" and pain; when she noted on the medical form that plaintiff had no injuries even though plaintiff had complained of injuries; and when she failed to refer plaintiff to a physician.  (Doc. 27,

p. 7).  Plaintiff claims that Bryson's actions were motivated by her desire to cover up the assault.

Defendant Bryson has submitted an affidavit and plaintiff's medical records. In her affidavit she states that on the morning in question she completed an Emergency Room Record (form DC4-701C) for an Inmate/Post Use of Force Exam on plaintiff.  Plaintiff told Bryson that he had been "jumped by some officers," and "complained of pain to chest, back, legs all over."  (Doc. 64, Bryson Aff.; *see also* Doc. 63, Ex. F).  Bryson took plaintiff's vital signs and indicated on the medical form that he was ambulatory, alert and oriented to person, place, time and situation.  She completed her assessment, including a visual inspection of plaintiff's body to identify any sign of injury.  Her assessment revealed no injuries.  The areas plaintiff identified were without abrasion or redness.  (*Id.*).  As part of her evaluation, she completed a Diagram of Injury Form, DC4-708, indicating that no injury was identified.  (Doc. 64, Bryson Aff; Doc. 63, Ex. G).  Bryson asserts that she did not falsify any medical records relating to plaintiff's Post Use of Force examination and assessment.

In response, plaintiff has come forward with no additional medical evidence indicating that he suffered any physical injury aside from his pain.[10]  Although

---

[10]The fact that the summary judgment evidence reveals that plaintiff suffered only physical pain as a result of the force does not mean that the alleged force used by Hatcher and Tidwell could not be deemed excessive under Eighth Amendment standards. *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) ("The absence of 'serious injury' alone is insufficient to dismiss a prisoner's Eight[h] Amendment claim.").  According to plaintiff's allegations, Hatcher's initial force was a punch to the mouth, and it was for no penological purpose, but instead to inflict pain.  And although plaintiff's attempt to flee may have justified some type of restraint to maintain order, a reasonable juror could conclude that the restraint Hatcher and Tidwell allegedly used, repeatedly punching and kicking plaintiff while he was lying restrained and motionless on the ground, was not *de minimis* and exceeded the amount of force authorized.  Thus, although a close case, viewing the summary judgment evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff's claims constitute more than a "*de minimis*" or insignificant use of force.  *Compare Harris*, 97 F.3d at 505-06 (finding more than de minimis force where plaintiff claimed: (1) that correctional officers as a group kicked and beat the plaintiff; (2) that particular officer specifically snapped plaintiff's head back with a towel, "mugged" or slapped him twice in the face, and harassed him with several racial epithets and other taunts; and (3) that some of these actions, particularly the kicking and use of the towel, caused or exacerbated injuries to plaintiff's back), *with Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) (finding *de minimis* force where an officer "grabbed [the suspect] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and

plaintiff mentions a pulled muscle, he indicates that he suffered this injury while he was waiting in the medical department _after_ the alleged beating and medical assessment.  (Doc. 27, p. 7).  Further, although plaintiff argues at length in his responses that injuries were obvious given the way he doubled over in pain during his shower and given the slow and painful manner in which he climbed the stairs, etc., (docs. 83, 109), these allegations are unsworn and, in any event, do not suggest the presence of Nurse Bryson to observe these movements.

Assuming, without deciding, that plaintiff was kicked and punched in the manner he describes, and further assuming that this caused pain and suffering rising to the level of a serious medical need, plaintiff's allegations fail to establish that Nurse Bryson was aware that plaintiff was in severe pain.  Nurse Bryson did not witness the use of force.  Her only observation of plaintiff was during her medical assessment, and her only indication of plaintiff's pain came from his description.  According to the allegations of plaintiff's second amended complaint, he "complain[ed] of pain in ribs, back, legs and head from being kicked."  (Doc. 27, p. 6).  Plaintiff's medical records corroborate that this was his description to Nurse Bryson.  During the Post Use of Force exam plaintiff described being "jumped" by officers, resulting in pain to his chest, back, legs and all over.  (Doc. 63, Ex. F). Nurse Bryson visually inspected plaintiff, noting that the areas were without abrasion or redness.  Based on these facts, plaintiff argues that Nurse Bryson should have provided medication or a pain reliever, as well as referral to a physician. Regardless of plaintiff's opinion, a reasonable jury could _not_ infer from these facts that Nurse Bryson deliberately subjected plaintiff to pain and suffering.

While the Eleventh Circuit has recognized that prison officials may violate the Eighth Amendment by failing to treat an inmate's pain, the evidence in those cases indicated that the officials knew the prisoner was in severe pain or discomfort, either due to the nature of the injury, or due to the frequency, duration or description of the

---

handcuffed him"), _and Siglar v. Hightower_, 112 F.3d 191, 193-94 (5th Cir. 1997) (holding that officer's twisting of prisoner's arm behind his back and twisting of his ear without provocation, resulting in a sore, bruised ear lasting for three days, did not raise a valid Eighth Amendment claim for excessive use of force).

inmate's complaints of pain.  *See McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (reversing grant of summary judgment to medical personnel on inmate's claim of deliberate indifference to his need for further diagnosis of and treatment for severe pain; evidence could support jury finding that doctor was aware prisoner was suffering tremendous pain and illness – doctor noted during examinations that prisoner was suffering from serious abdominal pain; prisoner had suffered severe physical deterioration and weight loss; and medical records showed prisoner made "nearly constant complaints" about his abdominal pain); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (concluding that a jury could find deliberate indifference where medical staff delayed medical treatment for broken foot without providing pain relief); *Aldrige v. Montgomery*, 753 F.2d 970, 972-73 (11th Cir. 1995) (reversing directed verdict to officers who failed to provide ice pack and aspirin prescribed by doctor for pain caused by cut above eye that had just been closed with six stitches), *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988) (reversing grant of summary judgment to prison officials on inmate's claim of deliberate indifference arising from delay in providing treatments that temporarily eliminated pain and suffering caused by erupted and infected lesions).  In the instant case, plaintiff's single, brief, and unremarkable complaint of pain, unaccompanied by any physical manifestation of injury, does not rise to the level of deliberate indifference discussed in those cases.  Plaintiff does not assert, and the evidence does not support an inference, that he communicated being in acute discomfort, that he requested a pain reliever, that he ever mentioned his pain to Nurse Bryson again, or that he showed any signs of a painful medical condition.  Construing the summary judgment evidence in a light most favorable to plaintiff, he has failed to demonstrate a genuine issue of fact for trial on his deliberate indifference claim against Nurse Bryson.

The same is true of plaintiff's claim that Nurse Bryson falsified medical forms by failing to note injuries.  Plaintiff alleges that he reported being in pain.  Nurse Bryson noted plaintiff's pain on the Emergency Room Record/Inmate Post Use of Force Exam form (doc. 63, ex. F) and, after being unable to identify any injuries, abrasions or redness, noted that as well.  Contrary to plaintiff's allegation that

Bryson did not fill out a Diagram of Injury form, the summary judgment evidence establishes that she did.  (Doc. 63, Ex. G).  She noted no injuries because none had been identified during her visual examination.  Plaintiff takes issue with Nurse Bryson's completion of the Pre-Special Housing Health Assessment form, arguing that she filled it out incorrectly when she indicated plaintiff had no medical complaints after noting on the other forms that he complained of pain.  (Doc. 109, p. 18).  The Pre-Special Housing Health Assessment form asked whether there had been a use of force.  Nurse Bryson indicated that there had.  The form then required her to complete an Emergency Room Record for Inmate/Post Use of Force Exam (form DC4-701C), which Bryson completed as described above.  The Pre-Special Housing Health Assessment form asked whether there were any current medical complaints, and if so, to describe the condition and treatment.  Nurse Bryson indicated that there were no current medical complaints.  Plaintiff has come forward with no evidence, medical or otherwise,[11] that he was suffering from a medical condition requiring treatment at the time the form was completed.  Assuming in plaintiff's favor that this answer was incorrect and that an inmate's complaint of pain should have been reported in response to this question, plaintiff has not presented evidence from which a jury could infer that the error was more than mere negligence.  Plaintiff has failed to come forward with evidence demonstrating a genuine issue of fact for trial concerning whether defendant Bryson falsified his medical records or forms in deliberate indifference to his serious medical needs.  Therefore, she is entitled to summary judgment on this aspect of plaintiff's Eighth Amendment claim.

Lastly, plaintiff asserts an equal protection claim against defendant Nurse Bryson.  The basis of the claim is unclear, although it appears plaintiff is claiming that she deprived him of his right to equal protection "by not filling out the necessary proper forms accurately," (doc. 27, p. 7; doc. 83, p. 2), and by not

---

[11]Again, plaintiff's responses to the special report/motion for summary judgment argue at length that plaintiff was injured (a pulled muscle).  (Doc. 83, 109, 110).  However, plaintiff's assertions in those responses are unsworn and, therefore, cannot be considered summary judgment evidence.  Moreover, plaintiff's medical records do not indicate that plaintiff was diagnosed with an injury.

"provid[ing] Nelms with the same attention given others." (Doc. 109, p. 1). Liberally construing plaintiff's *pro se* allegations in a light most favorable to him, they fail to reveal any factual basis for an equal protection claim. Plaintiff wholly fails to allege facts suggesting that the manner in which Nurse Bryson performed and documented her assessment and treatment of plaintiff was different than that provided to similarly situated persons. Nor does he allege that Bryson's treatment was on account of a constitutionally protected interest such as race. To the extent plaintiff suggests Bryson gave more attention to defendants Hatcher and Tidwell than to him, his claim is rebutted by the medical records. Similar to her completion of plaintiff's forms, Nurse Bryson in completing Hatcher's and Tidwell's Diagram of Injury forms checked the box marked "No injury identified," indicating that her visual inspection identified no injury even though each complained of pain (Hatcher to his right thumb, Tidwell to his to left wrist). (Ex. H, pp. 23-26). Neither Hatcher nor Tidwell were provided medical treatment for their pain. Plaintiff has come forward with no evidence creating a genuine issue of fact for trial on his equal protection claim.

## CONCLUSION

Upon full consideration of the evidence within the summary judgment record, the court concludes that this action is not barred by *Heck*, nor is abstention warranted under *Younger*. Given plaintiff's version of the facts, a reasonable jury could conclude that defendants Hatcher's and Tidwell's punching and kicking of plaintiff in the manner described constituted excessive force in violation of plaintiff's Eighth Amendment rights; therefore, these defendants are not entitled to summary judgment. However, based on the summary judgment evidence, a reasonable jury could not conclude that defendant Bryson deprived plaintiff of constitutionally adequate medical care by failing to treat his pain, failing to refer him to a physician, or falsifying plaintiff's medical records. Therefore, summary judgment should be granted in favor of defendant Bryson with regard to plaintiff's Eighth Amendment claims. Summary judgment in favor of Bryson is also appropriate on plaintiff's equal

protection claim. Finally, all of the defendants are absolutely immune from suit for damages in their official capacities.

Accordingly it is respectfully RECOMMENDED:

1. That defendants' motion for summary judgment (doc. 106) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

a. the motion be GRANTED with respect to plaintiff's damages claims against defendants in their official capacities,

b. the motion be GRANTED with respect to plaintiff's Eighth and Fourteenth Amendment claims against defendant Nurse Bryson, and

c. the motion be DENIED in all other respects.

2. That this matter be referred to the undersigned for further proceedings on plaintiff's Eighth Amendment claims against defendants Hatcher and Tidwell in their individual capacities.

At Pensacola, Florida this 17th day of December, 2008.

/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**